**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG S.A., | § § § § | CIVIL ACTION NO. 2:16-cv-573 **JURY TRIAL DEMANDED** |
| Plaintiffs, | § § | |
| v. | § § | |
| HULU, LLC, | § § | |
| Defendant. | § § § | |

**ORIGINAL COMPLAINT
FOR PATENT INFRINGEMENT**

Plaintiffs, Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (together "Uniloc"), as and for their complaint against defendant, Hulu, LLC ("Defendant"), allege as follows:

**THE PARTIES**

1. Uniloc USA, Inc. ("Uniloc USA") is a Texas corporation having a principal place of business at Legacy Town Center I, Suite 380, 7160 Dallas Parkway, Plano Texas 75024. Uniloc also maintains a place of business at 102 N. College, Suite 603, Tyler, Texas 75702.

2. Uniloc Luxembourg S.A. ("Uniloc Luxembourg") is a Luxembourg public limited liability company having a principal place of business at 15, Rue Edward Steichen, 4th Floor, L-2540, Luxembourg (R.C.S. Luxembourg B159161).

3. Uniloc has researched, developed, manufactured, and licensed information security technology solutions, platforms and frameworks, including solutions for securing software applications and digital content. Uniloc owns and has been awarded a number of patents. Uniloc's

technologies enable, for example, software and content publishers to securely distribute and sell their high value technology assets with minimum burden to their legitimate end users. Uniloc's technology are used in several markets, including, for example, software and game security, identity management, intellectual property rights management, and critical infrastructure security.

4. Upon information and belief, Defendant is a Delaware corporation having a principal place of business at 2500 Broadway, Santa Monica, CA 90404 and offers its products, including those accused herein of infringement, to customers and/or potential customers located in Texas and in the judicial Eastern District of Texas.

## JURISDICTION AND VENUE

5. Uniloc brings this action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271 *et seq.* This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). Upon information and belief, Defendant is deemed to reside in this judicial district, has committed acts of infringement in this judicial district, and/or has purposely transacted business involving the accused products in this judicial district, including sales to one or more customers in Texas.

7. Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and judicial district, including: (A) at least part of its past infringing activities, (B) regularly doing or soliciting business in Texas and/or (C) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

**PATENT-IN-SUIT**

8. U.S. Patent No. 8,566,960 (the '960 Patent"), entitled SYSTEM AND METHOD FOR ADJUSTABLE LICENSING OF DIGITAL PRODUCTS was filed on November 17, 2008 and claims priority to Provisional Application No. 60/988,778, filed on November 17, 2007. The '960 Patent issued on October 22, 2013. A true and correct copy of the '960 Patent is attached as Exhibit A hereto.

9. The '960 Patent spent nearly five years being examined at the United States Patent and Trademark Office. During examination of the '960 Patent, trained United States Patent Examiners considered more than two-hundred twenty (220) references before determining that the inventions claimed in the '960 Patent deserved patent protection. Such references include, for example, various references from IBM, Microsoft, Amazon, Northrop Grumman Corporation, Audible, Inc., Digital Equipment Corporation, Intel, AT&T, Fujitsu, Avaya, California Institute Of Technology, Disney, Adobe, Canon, Texas Instruments, Napster, NBC, Sony, Samsung, EBay, and Alcatel.

10. The '960 Patent issued after *Bilski v. Kappos*, 561 U.S. 593 (2010), and *Mayo Collaborative Servs'. v. Prometheus Labs., Inc*., 132 S. Ct. 1289 (2012). And although the examinations predated *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), that case applied the *Mayo* framework and stated that its holding "follows from our prior cases, and *Bilski* in particular …."

11. The '960 Patent claims technical solutions to problems unique to computer networks, such as controlling access to digital products in a manner that allows authorized customers the freedom to access the digital products even if using various electronic devices over

time, while mitigating the risk that software licenses are illegitimately "shared amongst end users or even in worst case shared anonymously over the Internet resulting in massive piracy and copyright abuse of the product." (*See*, *e.g.*, '960 Patent, col. 1, lines 30-60).

12. Although the systems and methods taught in the '960 Patent have been adopted by leading businesses today, at the time of invention, the technologies taught in the '960 Patent claims were innovative and novel, as evidenced, for example, by the breadth and volume of the references considered during prosecution.

13. Further, the '960 Patent claims improve upon the functioning of a computer system by granting considerable freedom to access digital products under certain usage expectations, thereby minimizing the impact of digital rights management upon authorized users.

14. Certain claims of the '960 Patent require a specific configuration of modules. For example, certain claims of the '960 Patent require "a communication module for receiving a request for authorization to use the digital product from a given device; a processor module in operative communication with the communication module; [and] "a memory module in operative communication with the processor module and comprising executable code . . . ." That executable code itself requires a particular configuration set forth in those claims. At least this example claim language confirms the '960 Patent recites meaningful limitations that are explicitly tied to machines.

15. The '960 Patent claims are not directed to a "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," or "a building block of the modern economy." Further, the systems and methods claimed in the '960 Patent were not a longstanding or fundamental economic practice at the time of patented inventions. Nor do they

involve a method of doing business that happens to be implemented on a computer. Nor were they fundamental principles in ubiquitous use on the Internet or computers in general.

16. Instead, as explained above, the '960 Patent claims are directed toward a solution rooted in computer technology and use technology unique to computers and computer networking to overcome a problem specifically arising in the realm of digital products in the Internet age where piracy and unauthorized use is rampant.

17. Because the claims of the '960 Patent are directed to improving the functioning of such computers and computer networks, they cannot be considered abstract ideas. *Enfish, LLC v. Microsoft Corp.*, 2015-1244, 2016 WL 2756255, at *8 (Fed. Cir. May 12, 2016).

18. Indeed, the Federal Circuit in *Enfish* reaffirmed that software is a "large field of technological progress" which patents can protect:

> Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes. We do not see in *Bilski* or *Alice,* or our cases, an exclusion to patenting this large field of technological progress.

*Id.*

19. The '960 Patent does not claim, or attempt to preempt, the performance of an abstract business practice on the Internet or using a conventional computer.

20. The claimed subject matter of the '960 Patent is not a pre-existing but undiscovered algorithm.

21. Publications of the application leading to the '960 patent have been referenced by more than seventy (70) other applications including patent applications by Microsoft; Symantec; Nokia; and Avaya.

## INVENTOR

22. Ric B. Richardson ("Mr. Richardson") is the inventor of the '960 Patent.

23. Mr. Richardson is no stranger to innovation. Mr. Richardson is a well-known Australian inventor who has been inventing since the 1970s. Mr. Richardson currently has more than 130 inventions. Such inventions have been licensed by more than a hundred companies, including, but not limited to Microsoft, IBM, Sony, Electronic Arts, Activision, and Adobe.

24. Mr. Richardson has been featured on national Australian shows such as the "The Big Deal" and "A Done Deal" as a result of such inventions.

25. Mr. Richardson has sought patent protection on some of his inventions and is listed as an inventor on at least a dozen granted patents.

26. Uniloc was founded on one of Mr. Richardson's first United States patents, U.S. Patent No. 5,490,216 (the "'216 Patent"). Mr. Richardson's '216 Patent was involved in prior litigation where a Rhode Island jury awarded Uniloc entities $388 million for infringement by Microsoft Corporation. At the time, this patent verdict was one of the largest in history.

27. Mr. Richardson moved to the United States from Australia and spent nearly a dozen years commercializing his inventions. Mr. Richardson has since returned to Australia and spends his free time mentoring young entrepreneurs on a pro-bono basis. Mr. Richardson continues to develop new inventions to this day.

## COUNT I
(INFRINGEMENT OF U.S. PATENT NO. 8,566,960)

28. Uniloc incorporates the preceding paragraphs herein by reference.

29. Uniloc Luxembourg is the owner, by assignment, of the '960 Patent.

30.     Uniloc USA is the exclusive licensee of the '960 Patent with ownership of all substantial rights therein, including the right to grant sublicenses, to exclude others, and to enforce, sue and recover past damages for the infringement thereof.

31.     Like Uniloc, Defendant relies upon intellectual property to protect its inventions.

32.     Defendant has an internal program referred to as the "Hulu Invents patent reward program."

33.     The Hulu Invents patent reward program is designed to incentivize engineers to submit invention disclosures that may ultimately be filed as patent applications.

34.     Defendant has filed hundreds of application on its streaming service, including applications directed to restricting delivery of a digital product based on geolocations such as IP addresses.

35.     Defendant has marketed and currently markets a digital product steaming service under the name "Hulu."

36.     Defendant provides access to Hulu for a fee of $7.99/month with commercials or $11.99/month for no commericals.  If this fee is not paid or the service is cancelled, the digital product steaming service is discontinued and one may no longer stream the desired digital product.

37.     One subscribing to this $7.99/month with commercials or $11.99/month for no commericals service is limited to a number of simultaneous streams. Upon information and belief, the $7.99/month with commercials or $11.99/month for no commericals service provides a technical or contractual one simultaneous stream.

38.     While the $7.99/month with commercials or $11.99/month for no commericals service provides one simultaneous stream, Defendant allows deviations from this based on certain

criteria. In particular, when certain criteria has been satisfied, a single account may stream more than one simultaneous stream.

39. Defendant also has a trial service for Hulu that allows one access to the digital product for one week. After such a trial period, one can continue to access the service for Hulu by paying a monthly subscription fee.

40. Upon information and belief, the following describes, at least in part, how Defendant's digital product steaming service works:

**1. Description of Service and Acceptance of Terms**

Hulu, LLC ("Hulu," "we," or "us") provides an online video service offering a selection of television shows, movies, clips, and other content (collectively, the "Content"). Our video service, the Content, our player for viewing the Content (the "Video Player") and any other features, tools, materials, or other services (including third party branded services) offered from time to time by Hulu through a variety of Access Points (defined below) are referred to collectively as the "Services." The term "Access Points" refers to, collectively, the hulu.com website (the "Hulu Site"), applications, and other places where any Services are available, including websites and applications of Hulu's third party distribution partners and other websites where users or website operators are permitted to embed or have otherwise licensed the Video Player.

Source: http://www.hulu.com/terms

**4. Subscriptions and Billing**

While we may offer Content from time to time for free, we charge a fee to access the Services that require a subscription in order to offer Content that Hulu would not otherwise be able to make available without charging a fee.

You can find the specific details regarding your subscription at any time by logging in on the Hulu Site and clicking on Account under your name. You agree that your subscription is for individual use only and your subscription is limited to only one simultaneous stream at a time. Additionally, you agree that for various reasons, such as restrictions from content licensors and other limitations or considerations from third parties, certain Content that may be accessible through one Access Point may not be accessible through another Access Point.

Source: www.hulu.com/terms

**4.3 Ongoing Subscription and Cancellation.** Your subscription will continue in effect on a month-to-month basis unless and until you cancel your subscription or the account or service is otherwise suspended or discontinued pursuant to these Terms. You must cancel your subscription before your monthly renewal date in order to avoid the next billing (each Monthly Period). We will bill the monthly subscription fee plus any applicable taxes to the Payment Method you provide to us during registration (or to a different Payment Method if you change your account information). If you cancel your subscription, cancellation will be effective at the end of the current Monthly Period -this means that you will have continued access to your subscription for the remainder of that period, but you will not receive a refund. You can cancel your subscription by logging into your Hulu Account and clicking "Cancel Subscription."

Source: http://www.hulu.com/terms

41. Upon information and belief, the following describes, at least in part, how Defendant's digital product steaming service works:

> **4.5 Free Trials.** On occasion, we may be authorized to offer free trials to a subscription for certain qualifying users. If we offer you a free trial, the specific terms of your free trial will be stated in the material describing the particular free trial. We are unable to accommodate combining free trials with any other offers. To view the specific details regarding your free trial, if any, log in on the Hulu Site and click on Account under your name.

Source: http://www.hulu.com/terms

42. Upon information and belief, the following describes, at least in part, how Defendant's digital product steaming service works:

> **2. Information We Collect**
>
> Hulu may collect the following information from or about you:
>
> <u>Information You Provide To Us.</u> We collect information you provide to us. For instance, when you register to use the Hulu Services, we collect your name, email address, birth date, and gender. If you are a paying subscriber, we also collect your credit card information, which may include your billing address and zip code. In addition, Hulu may collect information you provide to us when you respond to surveys, contact Hulu through customer service or by other means, or participate in promotions that Hulu may offer from time to time.
>
> <u>Usage and Log Data.</u> We collect information when you use the Hulu Services or view Hulu advertising outside of the Hulu Services. This information may include your IP address, device and software characteristics (such as type and operating system), location, activity on the Hulu Services including title selections and watch history, page views, ad data, referral URLs, network state, device identifiers or other unique identifiers such as advertising identifiers (e.g., "ad-ID" or "IDFA"), and carrier information.
>
> <u>Data Collected Through Cookies and Similar Technologies.</u> Like many online services, we use various technologies to collect usage data and store preferences. One such technology is called a cookie. A cookie is a small data file that is transferred to your computer's hard disk. We may use both session cookies and persistent cookies to better understand how you interact with the Hulu Services or Hulu advertising published outside of the Hulu Services and to monitor aggregate usage by our users and web traffic routing on the Hulu Services. This allows us to improve the Hulu Services. Also, we may create a unique device or user ID for you and store it in a cookie so we can recognize you and customize your experience based on your preferences.

Source: http://www.hulu.com/privacy#InfoWeCollect

43. Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:



**Source**: https://secure.hulu.com/signup?plus=1

44. Upon information and belief, the following describes, at least in part, how Defendant's digital product steaming service works:



Source:https://www.reddit.com/r/Hulu/comments/3dj807/how_many_people_can_watch_hulu_plus_at_the_same/

45. Upon information and belief, the following describes, at least in part, how Defendant's digital product steaming service works:



**Source**: https://help.hulu.com/articles/53106305

46. Upon information and belief, the following describes, at least in part, how Defendant's digital product steaming service works:



**Source**: https://www.moritzsteiner.de/papers/netflix-hulu.pdf

47. Upon information and belief, the following describes, at least in part, how Defendant's digital product steaming service works:

**Source**: https://secure.hulu.com/account/signin

48. Upon information and belief, the following describes, at least in part, how Defendant's digital product steaming service works:



**Source**: https://help.hulu.com/articles/22628103

49. Upon information and belief, a listing of all the devices that one may access Hulu from is contained at the following hyperlink: http://www.hulu.com/start/devices.

50. Upon information and belief, the following are amongst the list of parameters sent with an initial request to play content:



51. Upon information and belief, Defendant actively monitors the IP address to restrict access to the its digital product steaming service.

52. Upon information and belief, in the initiation of a play attempt and then ultimate playing of the digital product, multiple get and post requests are made to different servers associated with Defendant. Non-limiting examples are provided below:

| Request | Host | Size | IP |
|---|---|---|---|
| GET __utm.gif?u | stats.g.doubleclick.net | 0 B | |
| GET thumbnailcli | t2.huluim.com | 49 B | 96.16.6.67:80 |
| GET ping?client_i | facebook.com | 0 B | 31.13.65.36:443 |
| GET browse?apid | t2.huluim.com | 49 B | 96.16.6.67:80 |
| GET 5c8757d15d | tempo.hulu.com | 1.8 KB | 96.16.6.64:80 |
| GET 5c8757d15d | tempo-fallback.hulu.com | 1.6 KB | 96.16.6.17:80 |
| GET 915913?env | p.hulu.com | 0 B | 96.16.6.34:80 |
| GET sterm?v=18 | hulu.com | 0 B | 96.16.6.201:80 |
| POST playlist?vp | s.hulu.com | 5.0 KB | 96.16.6.88:80 |
| GET __utm.gif?u | stats.g.doubleclick.net | 35 B | 173.194.64.155:443 |
| GET position?_us | mozart.hulu.com | 133 B | 96.16.6.9:80 |
| GET The%20Patl | p.hulu.com | 0 B | 96.16.6.34:80 |
| GET The%20Patl | p.hulu.com | 0 B | 96.16.6.34:80 |

| Request | Host | Size | IP |
|---|---|---|---|
| GET Cinema%20 | p.hulu.com | 0 B | 96.16.6.34:80 |
| GET Cinema%20 | p.hulu.com | 0 B | 96.16.6.34:80 |
| GET all?categorie | mozart.hulu.com | 3.0 KB | 96.16.6.9:80 |
| GET all?categorie | mozart.hulu.com | 2.5 KB | 96.16.6.9:80 |
| GET all?categorie | mozart.hulu.com | 1.7 KB | 96.16.6.9:80 |
| GET 60687970?s | ib3.huluim.com | 44.0 KB | 96.16.6.88:80 |
| POST playback?c | t2.hulu.com | 0 B | 96.16.6.35:80 |
| GET 60687970?s | ib3.huluim.com | 19.5 KB | 96.16.6.88:80 |
| GET 60687970?s | ib3.huluim.com | 19.5 KB | 96.16.6.88:80 |
| GET embed?mz= | t2.hulu.com | 49 B | 96.16.6.35:80 |
| GET startup?mz= | t2.hulu.com | 49 B | 96.16.6.35:80 |
| POST batch | hulu.com | 377 B | 96.16.6.201:80 |
| GET 60687970.m | manifest.hulustream.com | 15.6 KB | 208.91.159.121:443 |



53.     Upon information and belief, the following are amongst the list of parameters sent for playback after a pause in streaming digital products:

```
a                    distro              r1
annotationenabled    distroplatform      r2
auth                 duration            referrerurl
beaconevent          embedurl            region
bitrate              exid                seq
c1                   flash               sessionguid
c2                   fullscreen          sitesessionid
cb                   language            siteversion
client               mz                  socialidentities
codeversion          os                  timepadding
computerguid         packageavailability totalframes
contentid            packageid           totalmemory
cpidentifier         pagedesign          userbandwidth
d1                   pagetype            userid
d10                  pageurl             visit
d2                   planid
d3                   player
d6                   playermode
d7                   position
d8                   promotion
```

54.     Defendant has directly infringed, and continue to directly infringe one or more claims of the '960 Patent in this judicial district and elsewhere in Texas, including at least claims 1-5, 7-8, 18, 22 and 25 literally and/or under the doctrine of equivalents, by or through making,

using, importing, offering for sale and/or selling its digital product steaming service during the pendency of the '960Patent which *inter alia* comprises instructions for allowing a digital product to be used when a device identify is on record, calculating device count authorized for use with the digital product, setting a limit for a time period when a device identity is not on record, and allowing the digital product to be used when the device count is less than the limit.

55. In addition, should Defendant's digital product steaming service be found to not literally infringe the asserted claims of the '960 Patent, Defendant's accused products would nevertheless infringe the asserted claims of the '960 Patent. More specifically, the accused digital product steaming service performs substantially the same function (adjusting access to a digital product), in substantially the same way (comprising computer readable instructions contained in or loaded into non-transitory memory) to yield substantially the same result (effecting time-limited access to the digital product). Defendants would thus be liable for direct infringement under the doctrine of equivalents.

56. Defendant may have infringed the '960 Patent through other software, currently unknown to Uniloc, utilizing the same or reasonably similar functionality, including other versions of its digital product steaming service. Uniloc reserves the right to discover and pursue all such additional infringing software.

57. Uniloc has been damaged, reparably and irreparably, by Defendant's infringement of the '960 Patent and such damage will continue unless and until Defendant is enjoined.

58. Uniloc has entered into a Patent License, Release and Settlement Agreement with Flexera Software LLC ("Flexera"). Uniloc is not alleging infringement of the '960 Patent based on any product, software, system, method or service provided by Flexera Software LLC or any Flexera

Predecessor ("Flexera Products"). For the purposes of this action, a Flexera Predecessor is any predecessor business owned or controlled by Flexera, including, but not limited to, C-Dilla Limited, GLOBEtrotter Software, Inc., InstallShield Software Corporation, Flexera Holding LLC, Flex co Holding Company, Inc., Flexera Software Inc., Acresso Software Inc., Intraware, Inc., Managesoft Corporation, HONICO Software GmbH, LinkRight Software L.L.C., and Logiknet, Inc. (d/b/a SCCM Expert) and only to the extent of, and limited to, the specific business, technologies and products acquired by Flexera from each of them, and Macrovision Corporation (renamed Rovi Solutions Corporation in July 2009) only to the extent of, and limited to, the specific business, technologies and products acquired by Flexera Holdings Company, Inc. in April 2008 (renamed Acresso Software Inc.), which later changed its name in October 2009 to Flexera Software LLC. For purposes of this action, Flexera Products do not include any third party products or services that provide activation, entitlement, licensing, usage monitoring and management, auditing, or registration functionality or third party products and services that are activated, licensed or registered exclusively and independently of products, software, systems, methods or services provided by Flexera or Flexera Predecessors. All allegations of past infringement against defendant(s) herein are made exclusively and independently of the authorized use of Flexera Products.

## JURY DEMAND

59.     Uniloc hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

Uniloc requests that the Court find in its favor and against Defendant, and that the Court grant Uniloc the following relief:

(A)  that Defendant has infringed the '960 Patent;

(B)  awarding Uniloc its damages suffered as a result of Defendant's infringement of the '960 Patent pursuant to 35 U.S.C. § 284;

(C)  enjoining Defendant, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries and parents, and all others acting in concert or privity with it from infringing the '960 Patent pursuant to 35 U.S.C. § 283;

(D)  awarding Uniloc its costs, attorneys' fees, expenses and interest, and

(E)  granting Uniloc such other and further relief as the Court may deem just and proper.

Dated:  May 30, 2016                Respectfully submitted,

*/s/ James L. Etheridge*

James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Brett A. Mangrum
Texas State Bar No. 24065671
Travis L. Richins
Texas State Bar No. 24061296
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com

***Counsel for Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A.***